## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

PAULA ANN HORTON,            )
                             )
       Plaintiff,      )
                             )
v.                           )   Case No. CIV-13-261-JHP-KEW
                             )
CAROLYN W. COLVIN, Acting    )
Commissioner of Social       )
Security Administration,     )
                             )
       Defendant.      )

## REPORT AND RECOMMENDATION

Plaintiff Paula Ann Horton (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on December 26, 1956 and was 55 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a telephone operator. Claimant alleges an inability to work beginning March 1, 2009 due to limitations resulting from neuropathy, narrowing of the spine, and restless leg syndrome.

**Procedural History**

On January 28, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On August 16, 2012, an administrative hearing by video was held before Administrative Law Judge ("ALJ") J. Frederick Gatzke. On September 12, 2012, the ALJ issued an unfavorable decision on Claimant's application. The Appeals Council denied review of the ALJ's decision on April 16, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform her past relevant work.

### Error Alleged for Review

Claimant asserts the ALJ committed error in failing to give the proper weight to the opinions of her treating physicians.

**Evaluation of the Treating Physicians' Opinions**

In his decision, the ALJ determined Claimant suffered from the severe impairments of morbid obesity, bilateral knee problems, left ankle tendon repair, and low back degenerative changes. (Tr. 14). The ALJ also found Claimant retained the RFC to perform sedentary work except that she should be able to change postural position from sitting to standing approximately every 55 minutes. (Tr. 17). After consultation with a vocational expert, the ALJ found Claimant could perform her past relevant work as a switchboard operator which allowed for her postural position limitation. (Tr. 25).

Claimant contends the ALJ did not properly evaluate the opinions of her treating physicians, Dr. Wanda McMichael and Dr. Anthony Capocelli. On June 19, 2012, Dr. McMichael prepared a Medical Source Statement - Physical on Claimant. She determined Claimant could occasionally lift/carry 10 pounds and frequently lift/carry less than 10 pounds, stand/walk less than 45 minutes to 1 hour at a time and less than 2 hours in an 8 hour workday, sit for less than 45 minutes to 1 hour at a time and less than 2 hours in an 8 hour workday, must periodically alternate sitting and standing to relieve pain or discomfort, may engage in limited pushing and pulling in the upper and lower extremities with pain across the scapula and upper back and in the lower back, hips, and

5

knees. Dr. McMichael found that "[r]epeated motion causes exacerbation of pain. (Tr. 377).

Dr. McMichael determined Claimant could never climb, balance, crouch, or crawl and could only occasionally stoop. She noted Claimant "has severe degenerative joint dz of knees, hip & back pain which limits her activities tremendously." She further limited Claimant in reaching less than occasionally, occasional handling, avoiding even moderate exposure to extreme cold and heat, avoid all exposure to wetness, fumes, odors, dusts, gases, poor ventilation, etc., and hazards such as machinery, dangerous equipments and heights. (Tr. 378).

On October 12, 2012, Claimant was also evaluated by Dr. Anthony Capocelli, an orthopedic specialist. Dr. Capocelli diagnosed Claimant with lumbar spinal stenosis, blunt chest trauma, pneumothorax, enthesopathy of the hip region, sleep apnea, and thyroid disorder. (Tr. 392). He did find that Claimant's hip pain had improved with injections but that she had some chronic back symptoms and some left foot numbness. He found she was "overall better." Strength in her upper and lower extremities was equal and symmetric. Sensation was grossly intact. (Tr. 392). Dr. Capocelli concluded Claimant was

> unable to return to her premorbid work duty and will not be able to in the future. She cannot sit for prolonged

6

periods would be unable to complete an 8 hour workday as an operator. At this point if she continues that type of work and tries to mask the symptoms with medications she'll likely worsen and ultimately end up having a preventable surgery.

(Tr. 393).

On April 17, 2012, Dr. Capocelli again found Claimant could not return to work due to the inability to sit for prolonged periods. He stated Claimant had received five injections and was doing well but that Claimant was "still with pain when sitting for prolonged periods and tries to keep relatively as active as possible. Currently not working which has helped a lot." Dr. Capocelli concluded that Claimant was "reasonably stable with ongoing intervention which I suspect will be lifelong. She is off work which I believes (sic) has helped as well. At this point whe is permanently disabled. She will follow up annually unless there is a change." (Tr. 394).

The ALJ first found Dr. McMichael's opinion was not due "controlling weight" despite his status as a treating physician. In so doing, the ALJ found Dr. McMichael's opinion (1) invaded the province of the ALJ by finding Claimant could not engage in full time work; (2) was not well supported by medically acceptable clinical and laboratory diagnostic techniques; and (3) was not consistent with other substantial medical and non-medical evidence

7

of record. (Tr. 19). He found Dr. McMichael had a limited treatment relationship with Claimant, Dr. McMichael failed to "buttress" his opinion with medically determinable findings, and cited no objective medical findings to support her opinion. The ALJ also determined Dr. McMichael rendered "extreme" functional limitation opinions which were based, in large part, "upon claimant's subjective complaints and self-reported symptoms that [the ALJ did] not find to be very credible." (Tr. 21). Ultimately, the ALJ found that Dr. McMichael's opinion was due "little weight." (Tr. 22).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still

8

entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

In order to evaluate whether support exists for Dr. McMichael's opinion, Dr. Capocelli's opinion must necessarily be examined, since it largely supports Dr. McMichael's findings. The ALJ found Dr. Capocelli's opinion invaded his province in determining Claimant's functional limitations. The ALJ repeatedly found that "there was no reason to assume" Dr. Capocelli was aware of the demands of Claimant's past relevant work, worked in settling claims for worker's compensation, or understood the sedentary nature of Claimant's work as a switchboard operator to render an opinion on permanent disability. (Tr. 22).

The ALJ noted that Claimant received injections with some success and only returned to Dr. Capocelli after four months. The ALJ gave Dr. Capocelli's "apparent off-the-cuff remarks" no weight. (Tr. 23). The ALJ instead relied upon the findings of the consultative examiners in rejecting these treating physicians' opinions.

The primary finding by both of these treating physicians which is subject to examination surrounds Claimant's inability to sit for prolonged periods which the vocational expert admitted was a requirement for Claimant's past relevant work as a switchboard operator. (Tr. 46). Claimant testified as to her continuing hip and back pain and the medication and treatment she received for it.

10

(Tr. 38). She also testified she could not sit for more than 45 minutes without getting up and moving around. (Tr. 43). The vocational expert testified that a switchboard operator would have to sit for 55 minutes at a time. (Tr. 46).

Dr. Capocelli's functional restrictions appear inconsistent with his treatment. He found that Claimant responded well to injections in her hip. (Tr. 392). Pain medication also alleviated some of Claimant's problems. (Tr. 39). After leaving her work as an operator, Claimant returned to the farm and worked with her husband, although the pain restricted her ability to do so. (Tr. 35). This Court finds the ALJ properly evaluated Dr. Capocelli's medical opinion and found they were unsupported under the factors set out in <u>Watkins</u>. Similarly, the ALJ properly rejected Dr. McMichael's opinion since little objective medical evidence, outside of the subjective functional evaluation set forth by Dr. Capocelli, supports the level of Dr. McMichael's restrictions. The objective medical evidence indicates that Claimant's conditions are for the most part treated successfully with medicinal intervention.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing

11

reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 10th day of September, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE